UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SECSYS, LLC, a New Mexico**
**limited liability company,**

      Plaintiffs,

    v.                                                      **CIVIL NO. 07-664 DJS/RLP**

**ROBERT VIGIL, in his individual capacity, and**
**ANN MARIE GALLEGOS, in her individual capacity,**

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment filed November 18, 2008 (Docket No. 39). Defendants seek judgment in their favor on Plaintiff's claims. The parties have consented, pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73 to the undersigned to conduct any and all proceedings in this case, including the entry of a final judgment.

      Plaintiff brings this action for damages pursuant to 42 U.S.C. §1983 and §1988. It asserts that Defendant Robert Vigil, who at the times relevant to the complaint was the State Treasurer for the State of New Mexico, and Defendant Ann Marie Gallegos, who at the times relevant to the complaint was the Assistant Deputy State Treasurer for the State of New Mexico, threatened to fail to honor a contract with Plaintiff SECSYS if it did not hire Samantha Saiz, wife of the former State Treasurer, and pay her forty percent of the gross value of the contract.

      In April, 2005, the New Mexico State Treasurer's Office issued a Request for Proposals for a Securities Lending Oversight Manager to oversee a securities lending program designed to provide

1

investment income to the Treasurer's Office. George Everage had recently quit his job with the State Treasurer's Office and formed Plaintiff SECSYS, which submitted a proposal for the contract. In May of 2005, after negotiations the parties agreed to terms for the Securities Lending Oversight Manager contract. The final contract was submitted to the State Treasurer's Office on May 27, 2005. Plaintiff asserts that in early 2005 Defendant Robert Vigil, the State Treasurer of New Mexico, suggested that Everage do him the favor of hiring the wife of a friend of his and later demanded that the hire be made. Everage learned that the person referred to by Vigil was Samantha Saiz, wife of the former State Treasurer, Michael Montoya. Everage states that Samantha Saiz told him that Defendant Vigil owed her husband and that if Plaintiff SECSYS did not hire and adequately compensate her, her husband would run against Vigil in the next election. Everage next asserts that Defendants Vigil and Gallegos threatened that if he did not hire Samantha Saiz and pay her forty percent of the gross value of the contract with SECSYS, the State Treasurer's Office would not honor that contract. Plaintiff SECSYS did not make the hire and on July 15, 2005, the contract was terminated.

Defendant Vigil was indicted and tried in Federal Court on twenty-four counts of extortion, racketeering, and other charges. He was found guilty of one count, attempted extortion of George Everage. United States v. Vigil, 523 F.3d 1258 (10th Cir. 2008). Plaintiff SECSYS asserts that it had a property interest in the Securities Lending Oversight Manager contract and that Defendants violated its rights under the Fourteenth Amendment to be secure in that property by breaching that contract.

**Summary Judgment**

Summary judgment is appropriate when there exists no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes

v. S. H. Kress & Co., 398 U. S. 144, 157 (1970). If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish the existence of a material, factual dispute. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U. S. 574, 585-87 (1986). To establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings, rather, he is required to offer evidence in the form of affidavits or other admissible evidence demonstrating that a genuine issue of material fact remains for the fact finder to resolve. Fed. R. Civ. P. 56(e); Matsushita Elec., 475 U. S. at 596-87. In other words, a party opposing summary judgment "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir.1996). Mere allegations, without more, are insufficient to avoid summary judgment. Lawmaster v. Ward, 125 F.3d 1341, 1349 (10th Cir.1997).

In determining whether summary judgment is appropriate, the Court will not weigh the evidence and determine the truth but rather determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. However, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**Discussion**

Defendants seek complete summary judgment on two grounds; first, that Plaintiff cannot establish that it was deprived of a cognizable property interest; and, second, that a simple breach of contract claim cannot give rise to a §1983 action. Essentially, the question before the Court upon Defendants' motion for summary judgment is whether a victim of an extortion scheme by state officials who is deprived of a contract due to his failure to go along with the scheme of extortion can

3

seek damages on the basis of the loss of that contract.

Defendants assert that the Court must first address whether Plaintiff has identified a liberty or property interest of which it has been deprived. They contend that Plaintiff lacked a property interest in the SLOM contract because the contract was never signed by Defendant Vigil or any member of the State Office of the Treasurer and note that NMSA 1978 §37-1-23(A), provides that: "Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."

The Fourteenth Amendment prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. 14, §1. "In order to present a claim of denial of substantive due process ... a liberty or property interest must be present to which the protection of due process can attach." Clinger v. New Mexico Highlands University, Bd. of Regents, 215 F.3d 1162, 1167 (10th Cir.2000). In Gunkel v. City of Emporia, Kan, 835 F.2d 1302, 1304 (10th Cir. 1987), the Tenth Circuit Court of Appeals explained:

> "As the Supreme Court has noted, property interests are not created by the Constitution. 'Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). And, although 'mutually explicit understandings' can be sufficient to create such property rights, Perry v. Sindermann, 408 U.S. 593, 601 (1972), 'the sufficiency of the claim of entitlement must be decided by reference to state law.' Bishop v. Wood, 426 U.S. 341, 344 (1976); see also Logan v. Zimmerman Brush Co., 455 U.S. 422, 430(1982) ('The hallmark of property ... is an individual entitlement grounded in state law.')."

"Protected property interests arise, not from the Constitution, but from state statutes, regulations, city ordinances, and express or implied contracts." Dill v. City of Edmond, 155 F.3d 1193, 1206 (10th Cir.1998). Defendants argue and Plaintiff does not dispute that NMSA 1978 §37-1-23(A) provides governmental entities with limited immunity from suits based in contract. Plaintiff contends that it does not bring a contract action and that the statute does not deprive it of a

4

protectable property interest.

In this case, the New Mexico State Treasurer's Office, through Defendants, drafted a contract and, after negotiations, presented a final draft to Plaintiff. Plaintiff's president, George Everage, signed the contract and returned it to the State Treasurer's Office. Defendant Vigil, at the time State Treasurer, did not sign the contract. Defendants assert, and Plaintiff does not dispute, that the State Treasurer's Office request for proposals noted that it had no obligation until a valid, written contract was awarded and approved by the appropriate authorities. Defendants note that, under New Mexico regulations then in effect, the New Mexico Department of Finance Authority was required to review and approve all financial services contracts greater than $1,500.00 and no such approval could be given by that agency unless the contract was signed by the State Treasurer.

The Court agrees that, by its terms and under state regulations, Plaintiff did not have a valid contract with the New Mexico State Treasurer's Office. Further, as argued by Defendants, the contract signed by George Everage on behalf of Plaintiff provided that the State Treasurer, if he found that the contract was not in the best interest of the state of New Mexico, could terminate the contract at any time at his sole will and that the contractor waived any right to claim any lost value in equity or law. Defendant's Motion for Summary Judgment (Docket No. 39), Exhibit 4, ¶5. Under these circumstances, the contract between Plaintiff and Defendant did not give rise to a protectable property interest which can support its §1983 action.

Based upon this conclusion, the Court will not address Defendant's argument that a simple breach of contract claim cannot give rise to a §1983 action. If no valid contract existed to serve as Plaintiff's protected property interest, the question of whether a contract claim can give rise to a §1983 claim becomes moot in this case. Further, that argument does not address Plaintiff's allegations regarding Defendants' criminal actions in seeking payoffs for letting the contract. Those

demands upon Plaintiff and Defendants' either refusal to complete or termination of the contract based upon his failure to accede to those demands make this more than a mere breach of contract matter.

The Supreme Court has recognized that the Fourteenth Amendment protects some categories of intangible property rights. See, e.g., Tulsa Professional Collection Serv. v. Pope, 485 U.S. 478, 485 (1988) (in recognizing an unsecured claim against an estate, the Court wrote: "Little doubt remains that such an intangible interest is protected by the Fourteenth Amendment."); Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) ("[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.' ") (citations omitted); Paul v. Davis, 424 U.S. 693, 710(1976) ("[T]here exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause."). In the criminal action against Defendant Vigil, the Tenth Circuit Court of Appeals concluded "[t]he government presented evidence that Mr. Vigil attempted to force Mr. Everage to hire Ms. Saiz as a condition for receiving the SLOM contract. A reasonable jury could conclude that this evidence demonstrates that Mr. Vigil attempted to obtain Mr. Everage's intangible right to make business decisions free from outside pressure and to decide with whom to work." Vigil, 523 F.3d at 1264. The Court also noted that Defendant Vigil made threats of economic harm depriving Plaintiff of the opportunity to compete for government contracts on a level playing field. Id. At 1265.

Even if Plaintiff does not show a sufficient intangible property or liberty interest to support a claim pursuant to 42 U.S.C. §1983, his complaint states a claim for deprivation of substantive due process. In order to state a claim for a violation of substantive due process, the conduct alleged "must do more than show that the government actor intentionally or recklessly caused injury to the

plaintiff by abusing or misusing government power ... [It] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Livsey v. Salt Lake County, 275 F.3d 952, 957-58 (10th Cir.2001); Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir.1995). Further, a substantive due process violation must be more than an ordinary tort to be actionable under §1983. Collins v. City of Harker Heights, Tx, 503 U.S. 115, 128 (1992). The Due Process Clause's protection against "conscience shocking" conduct traditionally only involves deliberately wrongful government decisions rather than merely negligent government conduct. Id. at 127 n.10. That conduct must violate the decencies of civilized conduct and interfere with rights implicit in the concept of ordered liberty. Sacramento v. Lewis, 523 U.S. 833, 847 (1998). Defendants' conduct in engaging in a scheme to let a government contract solely upon payment of extortion sufficiently shocks the conscience to state a claim for liability pursuant to §1983.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is denied.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**